**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
201-489-3000
201-489-1536  Facsimile
Attorneys for Defendants, Starco Impex, Inc., USA Millennium GP, LLC,
USA Millennium, LP, and M. Tahir Javed

| | |
|---|---|
| KATALYST BEVERAGE CORPORATION, : | UNITED STATES DISTRICT COURT |
| *a New York corporation*, : | FOR THE DISTRICT OF NEW JERSEY |
| : | Civil Action No. 10-5521 (JLL) (CCC) |
| Plaintiff, : | |
| : | |
| v. : | |
| : | **HEARING DATE AND TIME:** |
| STARCO IMPEX, INC., d/b/a : | **NOVEMBER 29, 2010 AT 10:00 A.M.** |
| WHOLESALE OUTLET, USA : | |
| MILLENNIUM, GP, LLC, USA : | |
| MILLENNIUM, LP, M. TAHIR JAVED, and : | |
| HILLSIDE BEVERAGE PACKING LLC, : | |
| : | |
| Defendants. : | |

---

## DEFENDANTS' BRIEF IN OPPOSITION TO THE TEMPORARY RESTRAINTS AND IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

---

Of Counsel:
    David M. Kohane

On the Brief:
    Damon T. Kamvosoulis
    Nicole A. Gerritsen

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

LEGAL ARGUMENT ............................................................................................... 2

I.     THE TEMPORARY RESTRAINING ORDER SHOULD BE DISSOLVED AND THE APPLICATION FOR A PRELIMINARY INJUNCTION DENIED. .............................................................................. 2

II.    PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS ........................................................................... 3

    A.    Katalyst Is Not Entitled To Injunctive Relief For The Use Of The Unprotectible Generic Term "Sippin Syrup." ............................. 3

        1.    Katalyst Cannot Rely on the Presumption of Validity Arising from Its Registration .................................................. 3

        2.    "Sippin Syrup" is a Generic Term for a Class of Carbonated Relaxation Beverages, therefore is not Protectable as a Trademark. .................................................... 4

        3.    Katalyst's Mark Is Invalid Because It Is Deceptively Misleading And Actually Causing Confusion Among Consumers. ........................................................................... 7

    B.    The LAPP Factors Favor Starco. ...................................................... 8

        1.    Starco's Mark Is Not Confusingly Similar To Katalyst's Generic Or Weak Mark. ......................................... 9

        2.    Katalyst's Mark is Extremely Weak. .................................... 10

        3.    It Is Katalyst's Mark That Has Caused Confusion Among Consumers, Not With Starco's Mark, But With Those Intending To Purchase The Illegal Sippin Syrup Product. ....................................................................... 11

i

C.   Starco Did Not Infringe Katalyst's Claimed, Unprotectable "Trade Dress" ................................................................. 13

1.   Katalyst Cannot Meet Its Burden To Prove That Sippin Syrup's Trade Dress is Functional. ........................... 13

The Bottle Is Functional ................................................. 14

The Label Is Functional. ................................................. 15

2.   The Trade Dress for Sippin Syrup is Not Inherently Distinctive Nor Has It Acquired Distinctiveness Through Secondary Meaning. ................................................. 17

3.   Katalyst Cannot Show A Likelihood of Confusion Between the Trade Dresses for the Products. ........................ 21

The Brand Names are Different. .............................................. 22

The Parties' Logos are Different. ............................................. 23

The Fonts are Different. ....................................................... 23

The Tag Lines are Different. ................................................. 24

Katalyst Cannot Establish the Remaining Scott Paper Factors. ......................................................................... 24

III.   KATALYST DOES NOT FACE IRREPARABLE HARM IF THE COURT DENIES ITS INJUNCTIVE RELIEF. .......................................... 25

IV.   THE BALANCE OF THE HARMS WEIGHS IN FAVOR OF DISSOLVING THE TEMPORARY RESTRAINTS AND DENYING THE PRELIMINARY INJUNCTION APPLICATION. ........ 26

V.   PUBLIC POLICY FAVORS THE DENIAL OF INJUNCTIVE RELIEF ............................................................................. 27

VI.   PLAINTIFF CANNOT SEEK EQUITABLE RELIEF BECAUSE IT COMES TO THE COURT WITH UNCLEAN HANDS. ........................ 28

VII.   IN THE ALTERNATIVE PLAINTIFF MUST BE REQUIRED TO POST A BOND TO PROTECT DEFENDANTS' INTERESTS. .............. 28

CONCLUSION ..................................................................... 30

48789/0001-7190582v2

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d. Cir. 2000)........3, 4, 8, 9

*Arrow Distilleries, Inc. v. Globe Brewing Co.,* 117 F.2d 347 (4th Cir. 1941)..............................10

*Barre Nat'l v. Barr Labs, Inc.*, 773 F.Supp.735 (D.N.J. 1991) ................................................25, 26

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989)...........................................21

*Brandywynne v. Combe International, Ltd.*, 74 F. Supp. 2d 364 (S.D.N.Y. 1999) ......................13

*CPC Int'l, Inc. v. Caribe Food Distribs.*, 731 F.Supp. 660 (1990) ......................19, 20, 22, 23, 24

*Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100 (3d Cir. 1988)...................................29

*Freixenet, S. A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148 (3d Cir. 1984) ..............................14

*Genovese Drug Stores, Inc. v. TGC, Inc.*, 939 F.Supp. 340 (D.N.J. 1996) ...................................27

*Good N' Natural v. Nature's Bounty, Inc.*, 1990 WL 127126 (D.N.J. Aug. 30, 1990)................21

*H. Lubovsky, Inc. v. Esprit de Corp.,* 627 F. Supp. 483 (S.D.N.Y. 1986).....................................10

*Interpace Corporation v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983) .................................................8

*Inwood Labs, Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)....................................................13, 19

*In re James T. Kirby*, 2008 WL 4674566 (T.T.A.B. Sep. 22, 2008) ................................................6

*Keebler Company v. Murray Bakery Products*, 866 F.2d 1386 (Fed. Cir. 1989)............................9

*Knorr-Nahrmittel, A.G. v. Reese Finer Foods, Inc.*, 695 F.Supp. 787 (D.N.J. 1988) ..................19

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).......................8

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F.Supp. 2d 360 (S.D.N.Y. 2000)......20, 21

*Marsellis-Warner Corp. v. Rabens*, 51 F.Supp.2d 508 (D.N.J. 1999)...........................................29

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350 (3d Cir. 2007).............22

*Miller GBrewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978) ......................................................................................................4

*Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002) ......................................4

*In re National Credit Management Group, L.L.C.*, 21 F.Supp.2d 424 (D.N.J. 1998)...................29

*Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990)...........2, 26

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577 (2d Cir. 1993) ............18, 19

*Precision Inst. Mfg. Co. v. Auto. Matin. Mach. Co.*, 324 U.S. 806 (1945)...................................28

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995) ....................................................13, 14

*Score Board, Inc. v. Upper Deck Co.*, 959 F.Supp. 234 (D.N.J. 1997) ......................................2, 3

*In re Shapely, Inc.*, 231 U.S.P.Q. 72 (T.T.A.B. 1986)..............................................................7

*Shire U.S. Inc. v. Barr Labs, Inc.*, 329 F.3d 348 (3d Cir. 2003)...................................................13

*Smith v. Ames Dept. Stores, Inc.*, 988 F. Supp. 827 (D.N.J. 1997)...............................................3

*Standard Terry Mills, Inc. v. Shen Mnfg Co.*, 803 F.2d 778 (1986) ...........................14, 16, 27, 28

*Stouffer Corp. Health Valley National Foods, Inc.*, 1 U.S.P.Q. 2d 1900 (TTAB 1986) ................9

*T.A.D. Avanti, Inc. v. Phone-Mate, Inc.*, 199 U.S.P.Q. 648. (C.D.Cal.1978)................................6

*The Savings Bank Life Insurance Company v. SBLI USA Mutual Life Insurance Company*, 2000 WL 1758818 ( E.D. Pa. 2000) ...................................................................4, 6

*Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001).................13, 14, 15, 17, 21

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).....................................................4, 18

*United States Golf Ass'n v. St. Andrews Systems*, 749 F.2d 1028 (3d Cir. 1984)...................14, 17

*Urgent Care Inc. v. S. Miss. Urgent Care, Inc.*, 289 F. App'x 741 (5th Cir. 2008)......................4

*Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189 (3d Cir. 1995) ..............................10

*Versa Prods. Co. v. Bifold Co.*, 50 F3d 189 (3d Cir. 1995)..........................................................9

*W.R. Grace and Co. v. Local Union 759, Intern. Union of United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757 (1983) ...........................................................29

*Warner Lambert Co. v. McCrory's Corp.*, 718 F.Supp. 389 (D.N.J. 1989) ....................14, 15, 19

**STATUTES**

15 U.S.C. §1052(e) ...................................................................................................................7

15 U.S.C. § 1115(a) ..................................................................................................................4

15 U.S.C. § 1125(a)(3)................................................................................................13

**RULES**

Federal Rule of Civil Procedure 65(c) ........................................................................29

**OTHER AUTHORITIES**

J.T. McCarthy, *Trademarks and Unfair Competition*, § 11:22, at 498-99 (2d ed.).......................19

48789/0001-7190582v2

## PRELIMINARY STATEMENT

Plaintiff Katalyst Beverage Corporation ("Katalyst" or "Plaintiff"), obtained a temporary restraining order and seeks a preliminary injunction to protect its "Sippin Syrup" brand of carbonated relaxation drink from competition from the "Sum Syzrrup" brand manufactured and sold by defendants Starco Impex, Inc., USA Millenium GP, LLC, and USA Millenium, LP. (with defendant M. Tahir Javed, "Starco").  For the reasons discussed below and in the accompanying declarations, Katalyst's alleged mark is invalid and unprotectable, or is at best extremely weak; no likelihood of confusion exists; and Katalyst's claimed trade dress is functional (and therefore also unprotectable), not distinctive and commonplace, raising no specter of confusion.

As discussed in more detail below, Katalyst's claimed trademark, "Sippin Syrup," is actually a common, generic term for a certain (illicit) carbonated relaxation drink commonly consumed in urban areas, especially in the South.  Katalyst has claimed that generic mark for its own carbonated relaxation drink, yet it failed to disclose the prior, generic usage of its mark to the Court in its moving papers or, apparently, to the United States Patent and Trademark Office ("USPTO") in obtaining its trademark registration.  These facts, alone, warrant denial of Katalyst's application for restraints.

Other facts in the case likewise require rejection of Katalyst's application include the clear differences between Katalyst's generic trademark, Starco's trademark, "Sum Syzrrup," includes a word completely different from Katalyst's mark ("Sum" versus "Sippin") and a second term with a spelling Starco invented ("Syzrrup"); that Katalyst's allegedly "distinctive" trade dress actually consists of a generic functional, off-the-shelf bottle available to anyone who wishes to purchase it, and other functional elements; that even though Starco had exceeded every target in the parties' distribution agreement, Katalyst, in a flagrant breach of the parties' long-term agreement, terminated Starco on pretextual grounds, without notice, after just one year –

which termination is already the subject of two pending lawsuits in Texas and that Katalyst's breach of the parties' agreement left Starco with a gaping hole in its beverage line that Starco was compelled to fill quickly, which it did properly using a different trademark from Katalyst's generic mark, with a different label, and with stock bottles.

In short, Katalyst is unfairly trying to prevent a competitor, Starco, from making its way onto the market.  It has failed to establish a likelihood of success on any of the elements of its claims; it has failed to show irreparable harm, that the equities tip in its favor, or that public policy favors the drastic relief it seeks; and it comes to this Court with unclean hands.  Its application should be denied and the restraints lifted so that Starco can resume its proper competition in the marketplace.

## STATEMENT OF FACTS

Starco respectfully incorporates by reference the Declarations of M. Tahir Javed, Mohammad D. Mohammad, Courtland James, and Damon T. Kamvosoulis, Esq., herein.

## LEGAL ARGUMENT

### I.   THE TEMPORARY RESTRAINING ORDER SHOULD BE DISSOLVED AND THE APPLICATION FOR A PRELIMINARY INJUNCTION DENIED.

To obtain the extraordinary relief of a temporary restraining order and preliminary injunction, a plaintiff must demonstrate: (1) the likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities in its favor; and (4) that an injunction is in the public interest.  *See Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 191-92 (3d Cir. 1990).  The Third Circuit has repeatedly recognized that "[a]n injunction is an extraordinary remedy which should be granted only in limited circumstances."  *Score Board, Inc. v. Upper Deck Co.*, 959 F.Supp. 234, 237 (D.N.J. 1997) (*citing* American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421,

1426-27 (3d Cir. 1994)).  Preliminary injunctions should be looked at with an even more discerning eye where, as here, "the motion comes before the facts are developed to a full extent through the normal course of discovery."  *Score Board, Inc.*, 959 F.Supp. at 237.  Katalyst cannot satisfy any of these elements, and its application should be denied.

## II.  PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS

### A.  Katalyst Is Not Entitled To Injunctive Relief For The Use Of The Unprotectible Generic Term "Sippin Syrup."

To establish a likelihood of success on its trademark infringement claims, Katalyst must prove: (1) that it has a valid and protectable mark; (2) that it owns the mark; (3) that the use of defendant's mark is likelihood to cause confusion with its mark.  *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d. Cir. 2000).  Katalyst cannot prove a likelihood of success on any of these elements.

#### 1.  Katalyst Cannot Rely on the Presumption of Validity Arising from Its Registration.

A mark is only valid and protectable if it is distinctive.  *Smith v. Ames Dept. Stores, Inc.*, 988 F. Supp. 827, 835 (D.N.J. 1997).   There are five (5) traditional levels of distinctiveness: generic, descriptive, suggestive, arbitrary, or fanciful.  Id.  A mark that is a generic word is not protectable.  *See A&H Sportswear, Inc.*, 237 F.3d at 210.  A descriptive mark may be protectable, but a plaintiff must first demonstrate that "goods or services" have obtained a secondary meaning.  *Id.*

To satisfy the first two elements of its trademark infringement case – ownership of a valid and protectable mark – Katalyst relies entirely on its recently obtained trademark registration for "Sippin Syrup" for "non-alcoholic beverages, namely, carbonated beverages." (*See* Pl. Br. at p. 10.)  Katalyst's registration is less than a year old, is not incontestable, and

therefore only affords Katalyst a rebuttable presumption that it owns a valid mark.  *See* 15 U.S.C.

§ 1115(a).  The "registration does not shift the ultimate burden of proof, but merely imposes on a

challenger of a trademark 'the burden of going forward with evidence to meet or rebut the

presumption; it does not shift the ultimate burden of proof.'"  *The Savings Bank Life Insurance*

*Company v. SBLI USA Mutual Life Insurance Company,*  2000 WL 1758818, at *15 ( E.D. Pa.

2000) (citations omitted).

As discussed below, the evidence overwhelming demonstrates that Katalyst's claimed

"Sippin Syrup" mark was in generic use for a carbonated beverage before Katalyst adopted it and

sought its registration for "carbonated beverages."  Katalyst cannot, therefore, rely on the

rebuttable presumption of validity.  That is especially so because the records of the USPTO

contain no indication that Katalyst disclosed this prior, generic use to the examiner.  *See id.* at

*17.

> **2.      "Sippin Syrup" is a Generic Term for a Class of**
> **Carbonated Relaxation Beverages, and**
> **Therefore Cannot Receive Trademark**
> **Protection.**

Generic trademarks cannot be registered and are afforded no protection.  *Two Pesos, Inc.*

*v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992).  Generic marks "function as the common

descriptive name of a product class.  *A&H Sportswear*, 237 F.3d at 221.  Examples of alleged

marks that were determined to be generic are:  "Diet Chocolate Fudge Soda" (*see id*.); "Urgent

Care" used in conjunction with medical services (*Urgent Care Inc. v. S. Miss. Urgent Care, Inc*.,

289 F. App'x 741 (5th Cir. 2008)" "Lite" for low calorie beer (*Miller GBrewing Co. v. G.*

*Heileman Brewing Co*., 561 F.2d 75 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978), and

"Smart Power" for semiconductors (*Nartron Corp. v. STMicroelectronics, Inc*., 305 F.3d 397

(6th Cir. 2002)).

4

Here, the evidence is overwhelming that Katalyst's mark is purely generic and is actually immoral and reprehensible.  "Sippin syrup" has been in use as a slang term since at least 2004. (*See* Kamvosoulis Decl. ¶ 4 & Ex. A.)  In an August 5, 2004 news story from Channel Oklahoma (the "NOCO Article"), for example, the term "Sippin Syrup" was directly used to describe the illegal cocktail.  The article states in pertinent part:

> The drug "Sippin' Syrup" – a concoction recently immortalized in a rap song by Three 6 Mafia – is a potential lethal mix of soda and prescription cough syrup.

> [Emphasis added.]

A simple internet search reveals numerous instances of the commercial media, popular culture and rap/hip-hop communities utilizing the term "sippin syrup" as the street name or class name for the illicit cocktail which Katalyst's product copies directly.  These media references include a November 28, 2008 article by Jemimah Noonoo ("Noonoo Article") available on line at both the Chronicle's website and through www.commericalalert.org.  (*See* Kamvosoulis Decl. ¶ 5 & Ex. B.)  The article specifically states, in pertinent part, as follows:

> "Sippin' syrup" is believed to have originated in Houston and it remains a common topic for Southern rappers.

Like the KOCO Article, the Noonoo Article makes reference to the generic use of "sippin' syrup" as an illegal relaxation beverage.  The Noonoo Article was also published more than five months prior to Katalyst brining its mark to the market.

As just one other example of many, an article titled "Company Makes Money from Deadly Urban Trend: 'Sippin Syrup'" (Kamvosoulis Decl. ¶ 13 & Ex. J.), begins: "You've probably heard the phrase 'sippin syrup,' used in reference to the act of mixing cough syrup, codeine, and soda together to create a relaxed feeling within the person who consumes the beverage."  The article goes on to discuss Katalyst's capitalizing on the name with its choice of

"Sippin Syrup" as its product name and the concerns that has raised among law enforcement and physicians.  (*Id.*)

The United States Drug Enforcement Agency ("DEA") even identified the name "sippin syrup" as a street name for this illegal product.  The DEA published the name as part of its "Get Smart About Drugs" program which is intended to alert and educate parents about drugs and drug use.  This notification by the DEA clearly demonstrates that the name "sippin syrup" has become mainstream and widespread.  (Kamvosoulis Decl. ¶ 6 Ex. C.)

Thus, "sippin syrup" has been used in the mainstream media and popular culture since at least 2004, and that Katalyst's adoption of this exact phrase is nothing more than an attempt to capitalize on an already infamous, generic name for a carbonated, non-alcoholic relaxation beverage.[1]  This evidence of generic use "bursts" any presumption to which Katalyst would be entitled by virtue of its registration – a registration apparently obtained without disclosure of the generic usage of "sippin syrup" or its illicit nature.[2]

---

[1] The USPTO has a history of rejecting names that refer to illicit street drugs.  In *In re James T. Kirby*, the reviewing attorney rejected a trademark registration application for an energy beverage named "Cocaine."  *In re James T. Kirby*, 2008 WL 4674566 (T.T.A.B. Sep. 22, 2008).  Katalyst failed to disclose in its application the prior use of the term "sippin syrup" and its connotation as an illegal narcotic concoction known for its relaxation effect.  (While the Appeal Board in *Kirby* did not accept plaintiff's mark, it did note that phonetic equivalents, similar to Starco's use of a similar but coined name, are permissible.)

[2] "An applicant for registration of a trademark is required to exercise uncompromising candor in his communication with the USPTO, lest any registration he obtains will be invalid and/or unenforceable. He must not only refrain from making false representations to the USPTO, but must make full disclosure of all facts to his knowledge which might bear in any way on the Office's decision to grant the registration sought."  *The Savings Bank Life Insurance Company v. SBLI USA Mutual Life Insurance Company,* 2000 WL 1758818, at *17 ( E.D. Pa. 2000), *citing T.A.D. Avanti, Inc. v. Phone-Mate, Inc.,* 199 U.S.P.Q. 648, 655-656. (C.D.Cal.1978).

6

**3.      Katalyst's Mark Is Invalid Because It Is
Deceptively Misleading And Actually Causing
Confusion Among Consumers.**

Even after registration of a mark, the mark can be held to be invalid if it is determined to be deceptively misdescriptive and/or deceptive.  15 U.S.C. §1052(e).  A mark is deceptive if it: (1) misdescribes the good being sold; (2) there is likelihood of misrepresentation; and (3) the misrepresentation will materially affect the decision to purchase the goods.  *In re Shapely, Inc.*, 231 U.S.P.Q. 72 (T.T.A.B. 1986).

Katalyst's mark is deceptive.  Indeed, some consumers have purchased it thinking it to be a bottled form of the underground "sippin syrup" carbonated relaxation cocktail.  (*See* Kamvosoulis Decl. ¶ 14.)  As Katalyst's product has exactly the same name as the underground slang name for this illicit product, its claimed "Sippin Syrup" trademark is deceptively misleading to consumers seeking the underground product.  As such, the first two parts of the deceptiveness test are easily met.

The final question, whether the misrepresentation materially affects the decision to purchase the goods, also points to invalidity.  For example, in a news video clip available at www.thegrio.com/2009/09/sippin-on-some-syrup.php, (the "Grio Video") a young adult tells the reporter that he was drawn to the product because of its name and its connotation as an underground product.  The young adult goes on to say that the name has likely fooled a number of people, and that, with the name "sippin syrup" on the bottle, the manufacturer will "make some money."  (*Id.*)

Katalyst's desire to confuse consumers into purchasing its product, thinking it is the underground cocktail, has clearly been successful.  As the trademark has been demonstrated to actually confuse consumers, it cannot be deemed valid and protectable.

7

## B.     The *LAPP* Factors Favor Starco.

Katalyst also fails to demonstrate a likelihood of confusion.  Katalyst has the burden to prove that Starco's "actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).

The Third Circuit employs a ten-factor test commonly referred to as the *"Lapp* factors," after *Interpace Corporation v. Lapp, Inc.*, 721 F.2d 460, 463-64 (3d Cir. 1983).  These factors are: (1) the degree of similarity between the owner's mark and the allegedly infringing mark; (2) the strength of the owner's mark; (3) the care consumers are expected to take in selecting the goods or service, as indicated by their prices and any other factors; (4) the length of time Starco has used the mark without actual confusion arising; (5) Starco's intent in adopting the mark; (6) evidence of actual confusion; (7) whether the goods, whether competing or not, are marketed through the same trade channels and advertised in the same media outlets; (8) the extent to which the parties target the same prospective buyers; (9) the relationship of the goods in the minds of consumers resulting from the similarity of the products or their functions or other factors; (10) any other factors that would suggest to the public that the prior owner might be the source of Starco's goods or services or might expand into that market, as well as evidence suggesting that prior owner intended to enter that market.

The *Lapp* factors are afforded such weight in each case as the particular facts warrant. Not all factors will be relevant, or need be used, in all cases.  *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 215 (3d Cir. 2000).  In this case, the application of the *Lapp* factors also requires that Katalyst's request for injunctive relief be denied.

48789/0001-7190582v2

1. **Starco's Mark Is Not Confusingly Similar To Katalyst's Generic Or Weak Mark.**

When reviewing marks for similarity the court must view both products separately, evaluating appearance, sound, and meaning of the marks. *Checkpoint Systems, Inc.*, 269 F3d at 281; quoting *Versa Prods. Co. v. Bifold Co.*, 50 F3d 189, 202 (3d Cir. 1995). The court must determine if the "average consumer, on encountering one mark in isolated circumstances of marketplaces and having only [a] general recollection of the other, would likely confuse or associate the two." *Id.*; *quoting Fisons*, 30 F.3d at 477-78.

In *Stouffer Corp. Health Valley National Foods, Inc.*, 1 U.S.P.Q. 2d 1900 (T.T.A.B. 1986), Stouffer's, owner of the famous mark "Lean Cuisine," challenged "Lean Living" as likely to cause confusion for low-calorie frozen dinners. The Trademark Trial and Appeal Board ("TTAB") found no likelihood of confusion even though the goods were identical, sold in the same channels of commerce, and the products were relatively inexpensive, even though both marks "evoked imagery associated with foods that are healthful because of their limited caloric, low-fat content" and way of life.

Similarly, in *Keebler Company v. Murray Bakery Products*, 866 F.2d 1386 (Fed. Cir. 1989), the Court of Appeals affirmed a grant of summary judgment by the TTAB for a registration of "Pecan Shorties" over the objection of Keebler Company that the mark was likely to cause confusion with "Pecan Sandies." There, as here, the marks consisted of two words. There, unlike here, one of the words was identical. The other, as here, started with the same letter (coincidentally, "S"). In addition, the second word, unlike here, were both two syllables and ended with the same "ees" sound. The goods and channels of trade were identical. The Court of Appeals found no likelihood of confusion. *Id.*

9

In this case, no finding of similarity can be made.  First, *both* words in the two composite marks are different.  "Sum" and "Sippin" are completely different in sound, spelling, syllables, and meaning.  "Syrup" is a common English word; "syzrrup" is a completely unique, coined word, with a different sound.  "Syrup," moreover, has become a generic term referring to an underground carbonated beverage.  The only similarities between the products is that the marks are two words and in both instances each word begins with the letter "s."  More so than *Keebler* and *Stouffers*, the marks here, while possessing minor similarities, are clearly different and distinct, therefore Katalyst fails to meet the first and most important part of the *Lapp* test.[3]

## 2.   **Katalyst's Mark is Extremely Weak.**

Even if "Sippin Syrup" is protectable at all, the only arguably common element with "Sum Syzrrup" is extremely weak in this product line.  Under the Lanham Act, stronger marks receive greater protection. *See, e.g.*, *Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.,* 50 F.3d 189, 203 (3d Cir. 1995).  Even suggestive or arbitrary marks – which "sippin syrup" is not – may be "weak" marks, particularly if they are used in connection with a number of different products. For instance, in *H. Lubovsky, Inc. v. Esprit de Corp.,* 627 F. Supp. 483 (S.D.N.Y. 1986), the court concluded that the mark "Esprit" though suggestive, was, in fact, a weak mark. *See id. at 487.*  Similarly, common marks like "Arrow," though certainly not particularly descriptive of the underlying product, have been held to be "weak" marks. *See Arrow Distilleries, Inc. v. Globe*

---

[3] Katalyst cites a promotional video on a website as evidence that "Syrup" and "Syzrrup" are pronounced the same way, but the video proves the opposite.  The video Mr. Urban sites, found at <u>www.sumsyzrrup.com/Sum-Syzrrup-buzz.htm</u>, pictures five people discussing the Sum Syzrrup drink and how to pronounce it.  The discussion emphasizes the "z" and the multiple "r's" in the pronunciation of the name.  Urban chooses one snippet from the video and mischaracterizes how that person pronounces the name – it is slurred.  No one can look at "SYZRRUP" and thinks it is pronounced the same way as the generic and ordinary English word "syrup."

10

*Brewing Co.,* 117 F.2d 347, 351 (4th Cir. 1941).  Katalyst's mark is nothing more than a generic term used to describe a class of relaxation beverages.  Even if the Court were to conclude that "Sippin Syrup" was not generic, the simple fact that it is recognized as the name of a class of beverages causing a similar relaxation state, would itself designate the mark as weak.  Its weakness also undermines a finding of likelihood of confusion.

### 3.     It Is Katalyst's Mark That Has Caused Confusion Among Consumers, Not With Starco's Mark, But With Those Intending To Purchase The Illegal Sippin Syrup Product.

The third, fourth, and sixth *Lapp* factors address confusion associated with the use of Starco's mark.  The *Lapp* factors consider evidence of actual confusion, likelihood of confusion based on price point and consumer education, as well as other facts.

Here, Katalyst claims both actual and likely confusion.  First, Katalyst argues that the cost of these products is so small that consumers will not pay attention to the manufacturer in selecting the beverage.  Katalyst submits no evidence for this proposition.  As any consumer of beverage-related products is aware, there is a multitude of choices.  This is particularly true in the dietary supplement and energy-related beverage market.  One only needs to browse the energy products to see the similarities in packaging, names, flavors, and ingredients.  Yet, even with all of the similarities the purchasers of these products are sophisticated enough to select the product they want to purchase.  The TTAB in *Stouffers*, *supra,* recognized that consumers seeking dietary products are particular about their choices and found no likelihood of confusion even though the two marks at issue had clear similarities, were relatively low cost and were marketed to the same class of individual, were distinct enough to be deemed non-infringing. Here, there is no evidence that consumers seeking a dietary supplement like the parties' products will not exercise a similar degree of care.

11

Katalyst claims it has presented evidence of actual confusion, but its evidence is based on speculation and hearsay.  Katalyst relies on self-serving statements of its distributors, Wencar, Inc. and Bevmark, Inc.  Those distributors' declarations are completely conclusory, and Starco denies their unsupported, one-line assertions that Starco was promoting Sum Syzrrup as Sippin Syrup.  (Javed Decl. ¶¶ 85-86.)

On the other hand, the declarations of Cortland James and Mohammad D. Mohammed, submitted with this brief, clearly demonstrate that contrary to Katalyst's allegations there have not been any confusion between the products by Supreme Beverages, Cleveland Foods, Goldring, or the other alleged distributors or customers.  The declaration of Mr. Mohammad of Cleveland Foods, an entity that sells both Sippin Syrup and Sum Syzrrup and a retailer with direct consumer access, clearly states that neither Cleveland nor its customers have ever expressed any concern or confusion regarding the products.  (*See* Mohammad Decl.)

The only demonstrated confusion in this case is the already-demonstrated confusion between Katalyst's product and the illicit street product known as "sippin syrup" from which the Katalyst product adopted its name.  As indicated in the Grio Video, the end-user consumers of Katalyst's product were drawn to it by the name association with the illicit and illegal street drug, not by price or manufacturer.  To the extent there is confusion in this case, it is not between Katalyst's mark and Starco's mark, it is between Katalyst's mark and an illegal, narcotic, underground cocktail that commonly goes by the name "sippin syrup."

Although Sippin Syrup is not a legally protectable mark, applying the *Lapp* factors further demonstrates that sufficient confusion does not exist to warrant the granting of preliminary injunctive relief.  As demonstrated herein, the application of the *Lapp* factors

12

directly and overwhelmingly favor Starco, therefore, Katalyst cannot demonstrate a likelihood of success on the merits.[4]

## C.   Starco Did Not Infringe Katalyst's Claimed, Unprotectable "Trade Dress."

Katalyst claims protection for the trade dress of the Sippin Syrup product, but Katalyst has failed to demonstrate it is likely to prove it owns a protectable trade dress.  To establish an infringement claim for trade dress, Katalyst must prove: (1) that the claimed feature is not functional; (2) that the claimed feature is distinctive, either inherently or through acquisition of secondary meaning; and (3) that the defendant's trade dress is likely to cause confusion as to the source of the product at issue.  *Shire U.S. Inc. v. Barr Labs, Inc.*, 329 F.3d 348, 353 (3d Cir. 2003).  Sippin Syrup's claimed "trade dress" meets none of these requirements.

### 1.   Katalyst Cannot Meet Its Burden To Prove That Sippin Syrup's Trade Dress Is Functional.

Under the Lanham Act, the party asserting trade dress protection "has the burden of proving that the matter sought to be protected is not functional."  15 U.S.C. § 1125(a)(3).  "[I]n general terms, a product feature is functional . . . if it is essential to the use or purpose of the article or if it affects the costs or quality of the article."  *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001) (*quoting Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)); *see also Inwood Labs, Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982). "A product's . . . trade dress is non-functional if that trade dress does not affect the product's

---

[4] Katalyst repeatedly asserts its formula is "proprietary" and hyperbolically accuses Starco's product of being "piratical" and "copycat."  Katalyst's unpatented ingredient mixture Katalyst publishes on its bottles is in the public domain and free for anyone to use.  *See, e.g., Brandywynne v. Combe International, Ltd.*, 74 F. Supp. 2d 364, 378 (S.D.N.Y. 1999) (disclosure of plaintiff's ingredients in marketing materials placed plaintiff's ingredient combination in the public domain).  One of the articles Mr. Urban attaches to his own certification cites most of the ingredients in Sippin Syrup as having been used in other relaxation beverages.  (*See* Urban Decl. Ex. B:  "Relaxation Nation: Trends in Calming Beverages.")  Katalyst's rhetoric is simply designed to inflame, not to shed light.

13

purpose, performance or economy of processing, handling, or use." *Warner Lambert Co. v. McCrory's Corp.*, 718 F.Supp. 389, 397 (D.N.J. 1989).  A court must consider whether the feature "is part of the 'function' served, or whether the primary value of a particular feature is the identification of the provider." *United States Golf Ass'n v. St. Andrews Systems*, 749 F.2d 1028, 1033 (3d Cir. 1984).  A product feature is also considered functional if granting the plaintiff exclusive use would put competitors at a "significant non-reputation-related disadvantage." *Traffix Devices, Inc.*, 532 U.S. at 33 (*quoting Qualitex*, 514 U.S. at 165).  Thus, even where confusion in the marketplace is proven, that confusion is tolerated where the confused features are functional.  *See Standard Terry Mills, Inc. v. Shen Mnfg Co.*, 803 F.2d 778, 780-81 (1986).

### The Bottle Is Functional

Here, Katalyst claims that Sippin Syrup's bottle, specifically a black plastic bottle with a black cap, is part of its "trade dress" for which it seeks this Court's protection.  This bottle, however, is a <u>stock</u> bottle, carried by bottle supplier Constar, Inc. ("Constar") and available to any consumer seeking to purchase it.  (Javed Decl. ¶¶ 67-68.)  Katalyst has not suggested that it designed this bottle or asked Constar to make it available only to Katalyst.  Even the color of the bottle was Constar's stock color.  (Javed Decl. ¶ 68.)  "As a general proposition, colors are not ordinarily protectable features of a trade dress."  *Warner Lambert Co.*, 718 F.Supp. at 398 *(citing Freixenet, S. A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 153 (3d Cir. 1984)).

Katalyst suggests that Starco purposely choose its bottle supplier, Constar, for nefarious reasons.  That suggestion is false.  As explained by Mr. Javed in his declaration, Starco approached a number of bottle manufacturers with Starco's specifications for its relaxation drink.  Only Constar could promptly meet Starco's specifications.  (Javed Decl. ¶¶ 61-72.)  In addition, Starco originally sought a full body shrink for the Sum Syzrrup bottle because it understood that the contents would deteriorate more quickly if exposed to light.  (Javed Decl. ¶ 56.)  That proved

14

prohibitively expensive.  (Javed Decl. ¶¶ 64-65.)  Starco then selected the body label and neck label that are currently found on the Sum Syzrrup bottle, recommended by Constar.  (Javed Decl. ¶72.)  These facts establish that the choice of Constar's stock black bottle was "essential to the use or purpose of the article" and it also "affect[ed] the costs or quality of the article."  *See Traffix Devices, Inc.*, 532 U.S. at 32; *Warner Lambert Co.*, 718 F.Supp. at 397.

Furthermore, Constar's black stock bottle was the only bottle that could be provided within the short timeframe Starco was forced to work under due to Katalyst's unjustified termination of the Distribution Agreement.  (Javed Decl. ¶ 51.)  This is yet another reason why the black stock Constar bottle is functional.  Starco would have been at a significant disadvantage if it was forced to wait for a non-stock color of the bottle manufactured by Constar before it was able to produce its relaxation drink.  *See Traffix Devices, Inc.*, 532 U.S. at 33.

In sum, the black resealable bottle is functional and therefore fails to meet the requirements for trade dress protection under the Lanham Act.  Requiring Starco to wait for a different color bottle that was not in "stock" at Constar would have put Starco at a competitive disadvantage, and a black bottle color is necessary to preserve the natural ingredients in Sum Syzrrup since the full body shrink of the bottle was cost prohibitive.

## The Label Is Functional.

Katalyst also claims that Sippin Syrup's trade dress is distinctive, choosing to define its trade dress with a view toward making Sum Syzrrup's trade dress fall within its parameters.  This effort should be rejected.

First, Katalyst points to the bottle label feature that contains a "a short tag line displayed in close proximity to the brand name."  (Pl. Br. at 3.)  This is a convenient characterization of Sippin Syrup's label, but there is nothing distinctive about this feature. Numerous products have a type of tag line associated with it.  A short tag line is a staple of every successfully marketed

15

brand, especially drinks.  "Gatorade" uses the tag line "Is it in you?"; and "Red Bull" uses the tag

line "it gives you wings."  In fact, other relaxation drinks have short tag lines: "drank," the first

relaxation drink, uses "slow your roll" on its label below the product name; "LEAN" uses "slow

motion… potion" on its label, directly under the product name; and "PURPLE STUFF" uses

"CALM DOWN RELAX THE BODY FOCUS THE MIND," directly under the product name.

(Kamvosoulis Decl. ¶¶ 10-12 & Ex. G-I.)  Katalyst is attempting to protect the features of a

bottle design that are essential to a successful drink.  *See Standard Terry Mills, Inc.*, 803 F.2d at

780-81.  The Court should decline this misapplication of trademark law and recognize that "a

short tag line displayed in close proximity to the brand name" is functional and therefore not

subject to trade dress protection.

Next, Katalyst claims that Sippin Syrup's protectable trade dress is also made up of "the

listing of the blended items that promote relaxation (the "Proprietary Calming Blend") displayed

at the bottom of the Supplement Facts" as well as "the listing of ingredients displayed vertically

and to the left of the Supplement Facts."  (Pl. Br. at 3.)  Again, this is a functional aspect of the

product and therefore not subject to trade dress protection.

As recognized in an article attached to the Declaration of Ron Urban in support of

Katalyst's application, consumers are looking for clear labeling regarding the functional

ingredients of a product.  (Declaration of Ron Urban, Exhibit B.)

> Today's "prove it" consumer mentality means that manufacturers
> must create products that provide specific benefits and back the
> beneficial claims with a **transparent formulation**.   Trusted
> **functional ingredients**, **clear labeling** and **savvy positioning**
> must all work together to help build consumer trust, and many
> manufacturers of relaxation and anti-stress beverages have found
> innovative ways to tout their unique benefits.
>
> [Declaration of Ron Urban, Exhibit B, *"Relaxation Nation: Trends
> in Calming Beverages,"* Kristen Walker, Mintel Research
> Consultancy, Jul. 16, 2010 (emphasis added).]

16

Sippin Syrup's inclusion of the "blended ingredients that promote relaxation" is functional – it responds to the consumers who want to know, clearly, what ingredients they are ingesting when they select this dietary supplement.  Furthermore, the positioning of the ingredients "vertically and to the left of the Supplement Facts," is not even unique to Sippin Syrup.  Other relaxation drinks, besides Sum Syzrrup, list the ingredients vertically and to the side of the Supplement Facts panel.  (See LEAN label, Kamvosoulis Decl. ¶ 11& Ex. H)  This feature cannot be said to identify Katalyst as the provider.  *See United States Golf Ass'n*, *supra*, 749 F.2d at 1033.  Additionally, preventing Starco from listing the active ingredients in its relaxation blend or from including the ingredients vertically next to the Supplement Facts, may result in a "significant non-reputation-related disadvantage."  *Traffix Devices, Inc.*, 532 U.S. at 33.  As Katalyst, itself, recognized in its moving papers, consumers of relaxation beverages want to see "functional ingredients, clear labeling and savvy positioning" of this information.  *See Relaxation Nation: Trends in Calming Beverages*.

Sippin Syrup's trade dress, as it defines it, is functional, and therefore, Katalyst cannot prove a likelihood of success on its trade dress claim.  As discussed below, however, Katalyst's trade dress claim also fails because it does not meet the remaining two elements of a trade dress infringement claim.

> **2.     The Trade Dress for Sippin Syrup is Not Inherently Distinctive Nor Has It Acquired Distinctiveness Through Secondary Meaning.**

Katalyst argues that Sippin Syrup's trade dress is both *inherently* distinctive and has acquired distinctiveness through secondary meaning.  Katalyst further argues that Starco "copied" the Sippin Syrup trade dress for the Sum Syzrrup product.  These conclusory allegations do not support Katalyst's trade dress infringement claim, and the absence of factual

evidence to support the distinctiveness of the trade dress require denial of Katalyst's application for a preliminary injunction.

To be considered inherently distinctive, a trade dress must be suggestive or arbitrary or fanciful. *Two Pesos, Inc.*, 505 U.S. at 768-69. If the trade dress is merely descriptive of the product at issue, then it cannot be inherently distinctive. *Id.* This is because descriptive trade dress does not inherently identify a specific source of the product and as such cannot be protected as "inherently distinctive." *Id.* at 769. Here, Katalyst's trade dress is merely descriptive of the product at issue, and as such, it cannot be inherently distinctive.

Katalyst relies on the Second Circuit's decision in *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577 (2d Cir. 1993), for its conclusory allegation that Sippin Syrup's trade dress is inherently distinctive. The Court there recognized that where it is custom in the industry to package products in a particular manner, a trade dress using that style is generic and not inherently distinct. *Id.* at 583. Moreover, the Court further noted that courts should examine the context in which the words comprising the trade dress are used in order to determine whether the trade dress is inherently distinctive. *Id.* at 583. As an example, the Court pointed to the analysis and explanation offered by J.T. McCarthy in his treatise, *Trademarks and Unfair Competition*:

> As one commentator explained, "the word 'apple' would be arbitrary when used on personal computers, suggestive when used in 'Apple-A-Day' on vitamin tablets, descriptive when used in 'Tomaple' for combination tomato-apple juice and generic when used on apples.
>
> [*Id.* at 583 (*citing* J.T. McCarthy, *Trademarks and Unfair Competition*, § 11:22, at 498-99 (2d ed.)).]

Here, it is the custom of the industry to use the trade dress Katalyst seeks to protect. Specifically, other manufacturers of relaxation drinks utilize "bubble lettering" to display the

brand name of the product (*see* Kamvosoulis Decl.¶¶ 10-12 & Ex. G-I), a circle design displayed

behind the product brand name (*see* Kamvosoulis Decl. ¶ 12 & Ex. I), multiple geometric shapes

behind the brand name (*see* Kamvosoulis Decl. ¶ 10 and 12 & Ex. G and I), a short tag line in

close proximity to the brand name (*see* Kamvosoulis Decl. ¶¶ 10-12 & Ex. G-I), and the listing

of ingredients displayed vertically and to the side of the Supplement Facts (*see* Kamvosoulis

Decl. ¶ 12 & Ex. I).  As such, the trade dress, as a whole, is generic, not unique to Sippin Syrup,

and therefore not inherently distinctive.

  In the absence of inherent distinctiveness, a plaintiff must prove that the trade dress has

acquired distinctiveness through secondary meaning.  "To establish secondary meaning, a

manufacturer must show that, in the minds of the public, the primary significance of a product

feature or term is to identify the source of the product rather than the product itself."  *Inwood*

*Labs, Inc.*, 456 U.S. at 851 n.11; *see  Warner Lambert Co.*, 718 F.Supp. at 397.  To determine

whether secondary meaning has been established, courts may consider the length of time for

which the packaging has been used, buyer association, as well as whether the packaging is

copyrighted.  *CPC Int'l, Inc. v. Caribe Food Distribs.*, 731 F.Supp. 660, 666 n.9 (1990) (*citing*

*Knorr-Nahrmittel, A.G. v. Reese Finer Foods, Inc.*, 695 F.Supp. 787, 792 (D.N.J. 1988)).

  In *CPC Int'l, Inc.*, the United States District Court for the District of New Jersey

considered two competing corn oil bottles and their trade dress: La Mazorca corn oil and Mazola

corn oil.  Both products were sold in yellow, jug-shaped containers with a green screw-on top.

731 F.Supp. at 666.  Furthermore, the brand names were similar.  *Id.*  However, the Court denied

trade dress protection to Mazola, finding that there was no evidence establishing that the Mazola

corn oil container had acquired secondary meaning.  *Id.* at 666-67.

Here, Katalyst has not shown that the trade dress associated with its product, which is descriptive and common in the relaxation drink market, has acquired secondary meaning. Rather, the evidence shows that the Sippin Syrup bottle is a "stock" bottle that any person can purchase from Constar.  (Javed Decl. ¶ 68.)  Moreover, many relaxation drinks use similar bubble lettering, geometric shapes, short tag lines, and displays of ingredients in their respective trade dresses.  (*See* Kamvosoulis Decl. ¶¶ 10-12 & Ex. G-I)  As such, these features, whether considered individually or in their totality, do not give rise to any secondary meaning.

Katalyst rests its argument in favor of secondary meaning on a conclusory statement that "those in the beverage industry, and consumers as well, because of the distinctive nature of the trade dress, have come to understand that it originates, or at least is associated with, a single source."  (Pl. Br. at 21.)  Katalyst offers no evidentiary support for this conclusion.  Indeed, in addition to possessing common trade dress with common elements, Sippin Syrup has only been on the market since approximately May 2009.

For this reason, Katalyst's reliance on the outside Circuit case, *Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F.Supp. 2d 360, 366 (S.D.N.Y. 2000), is misplaced.  There, the court denied trade dress protection, finding that, although the trade dress had obtained secondary meaning, there was no likelihood of confusion.  In so doing, the Court noted that a **five year period of continuous use** of the trade dress was evidence of secondary meaning.  *Id.* (emphasis added).  Katalyst has been using the purported trade dress for only one year.  No inference of secondary meaning can arise from one year of use.

Moreover, Katalyst's argument that Starco "consciously imitated Katalyst's trade dress" is unsupported.  Mr. Javed's declaration explains in detail how and why Starco selected its packaging.  Even if Starco had sought to "consciously imitate" Katalyst's trade dress, which it

20

did not, the case law in this district is clear that "intentional copying is only one of the factors

that must be considered by this Court . . . ." *Good N' Natural v. Nature's Bounty, Inc.*, 1990 WL

127126 at *12 (D.N.J. Aug. 30, 1990). As such, even if Starco copied the trade dress of Sippin

Syrup for its Sum Syzrrup product, which it clearly did not, that would not prove secondary

meaning or create a presumption of secondary meaning. *Id.* at *12. Courts have recognized that

"[t]rade dress protection must subsist with the recognition that in many instances there is no

prohibition against copying goods and products. In general, unless an intellectual property right

such as a patent or copyright protects an item, it will be subject to copying." *Traffix*, 532 U.S. at

29 (*citing Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 160 (1989)). As such,

even if Starco copied the Sippin Syrup trade dress, which it clearly did not and for which there is

no supporting evidence, this alone would not indicate secondary meaning.

Therefore, because Katalyst has not established that the trade dress for Sippin Syrup is

inherently distinctive or that it is distinctive through secondary meaning, Katalyst does not have

a likelihood of success on the merits of its trade dress claim.

### 3.     Katalyst Cannot Show A Likelihood of Confusion Between the Trade Dresses for the Products.

Finally, Katalyst fails to show that there is a likelihood of confusion between the trade

dresses for Sippin Syrup and Sum Syzrrup. Katalyst's defined trade dress is not likely to cause

confusion between the products because the only real "similarity" is the functional, naked bottle

in which the products are sold. The labels are clearly distinct, and no reasonable consumer

would not think that these products were sold by the same manufacturer. As such, this

requirement for trade dress protection is not met, and a preliminary injunction should not issue.

A likelihood of confusion exists in a trade dress case when a consumer viewing the

defendant's trade dress would "probably assume" the product is "associated with the source of a

different product identified by the plaintiff's similar trade dress." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).  Third Circuit courts apply the *Scott Paper* factors in determining whether there is a likelihood of confusion.  *CPC Int'l, Inc.*, 731 F.Supp. at 665.  These factors include, but are not limited to: (1) the degree of similarity between the owner's trade dress and the allegedly infringing product; (2) the strength of owner's trade dress; (3) the intent of defendant in adopting the trade dress; and (4) the evidence of actual confusion.  *Id.* at 664-65.

In a trade dress case, similarity is the most important factor.  *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).  The Court must "look to the overall appearance of the competing products, not merely the specific similarities or differences."  *CPC Int'l, Inc.*, 731 F.Supp. at 666.  However, even where product names are similar, this Court has recognized that the addition of a different word preceding the similar word can eliminate the likelihood of confusion.  *See id.* at 666 (finding that the addition of the word "La" to be "La Mazorca" corn oil eliminates the similarity between this brand of corn oil and Manola corn oil).

Here, the brand names, logos, fonts, and tag lines are different from each other in the Sippin Syrup and Sum Syzrrup products.  Moreover, Sippin Syrup does not have a distinctive trade dress, Starco had no intent to copy Katalyst's product, and the evidence of actual confusion is weak, at best.  As such, there is no likelihood of confusion between the trade dresses at issue, and Katalyst's claim must fail.

## The Brand Names are Different.

The differences between the parties' brand names, prominently featured on their labels, also undermines Katalyst's trade dress claim.  Each brand name features a different first word, "Sippin" as compared to "Sum," and each word is a different number of letters (6 letters vs. 3

22

letters) and syllables (2 syllables vs. 1 syllable).  Moreover, these first words sound nothing

alike.  Additionally, the second words are different in length and pronunciation as well:

"Syzrrup",  while the second word in Katalyst's product is the common English word "syrup."

Even the video cited in Katalyst's papers as proving the words are pronounced similarly proves

they are ***not*** pronounced the same way:  the people in the video repeatedly focus on the "z's" and

multiple "r's" in Sum Syzrrup.  www.sumsyzrrup.com/Sum-Syzrrup-buzz.htm.  As the Court

noted in *CPC Int'l Inc.*, visual differences and aural differences accentuated by a different first

word in brand names can undermine any finding of a likelihood of confusion.  731 F.Supp. at

665.

### The Parties' Logos are Different.

Sippin Syrup's logo contains an outlined circle within another thinner circle.  Each circle

is a different color and contains words neatly within the bounds of the circles.  On the other

hand, Sum Syzrrup's logo is a circle with graphics inside, which is outlined by a diamond shape.

All colors in this logo are in the same shade, and the top and bottom tips of the diamond have

banners crossing through indicating the flavor at one end and stating "Natural Ingredients" at the

other end.

### The Fonts are Different.

The font used by Katalyst for the brand name on its label is boxy, filled, and in all capital

letters.  Additionally, the word "Sippin" is arched to the left, and the word Syrup is angled to the

left.  The font used by Starco for the brand name on its label is rounded, bubbly, and in both

capital and lower case letters.  Moreover, both words are angled to the right and contain no

arched letters.  (*Id.*)

### The Tag Lines are Different.

Finally, the tag line used by Starco for Sum Syzrrup is different from that used by Katalyst for Sippin Syrup.  The most important difference is that Sippin Syrup's tag line is not found on the face of its bottle as part of the logo, while Sum Syzrrup's tag line is right next to the main logo on the label.  (*Id.*)  Furthermore, the tag lines contain different words, "Relax.  Get sum" as opposed to Sippin Syrup's "Grip & Sip."  These tag lines evoke different feelings as well – Sum Syzrrup's line focuses on the feeling experienced by someone who drinks it, while Sippin Syrup's line focuses on the ease with which the beverage can be consumed.  (*Id.*)

### Katalyst Cannot Establish the Remaining *Scott Paper* Factors.

Sippin Syrup has only been on the market since the middle of 2009, and it initially had insufficient circulation, which is why it sought the assistance of Starco with its distribution.  (Javed Decl. ¶¶ 13-18.)  Moreover, many other relaxation drinks on the market utilize the same trade dress as Sippin Syrup—there is nothing unique or different about it.  As such, the trade dress for Sippin Syrup is weak and not worthy of protection.

Additionally, the alleged "actual confusion" by Katalyst is complete speculation and hearsay.  As explained by Courtland James, the broker for Starco and formerly Sippin Syrup, the distributors with whom he spoke understood that Sum Syzrrup was a different brand made by a different manufacturer.  Contrary to Katalyst's allegations, for example, Supreme never expressed any confusion regarding the two products.  (James Decl. ¶ 16.)  Neither has Cleveland Food Mart, which Mr. Urban claims "upon information and belief" was confused.  (Mohammed Decl. ¶¶ 2-7.)  At the very least, this demonstrates that there is no *likelihood* of confusion, and therefore a preliminary injunction is unwarranted.

24

Furthermore, Starco did not intend to copy the Sippin Syrup trade dress.  Starco has been

in this business for more than twenty years and manufactures multiple products, including an

energy drink.  (Javed Decl. ¶¶ 13-15.)  Prior to its relationship with Katalyst, Starco distributed

both "drank" and "Tranquilizer," two relaxation drinks on the market prior to Sippin Syrup.  It

did not need to copy Sippin Syrup as it was already well-versed in this business and knew how to

attract customers—that was the reason Katalyst approached Starco for assistance distributing

Sippin Syrup in the first place.  (*See* Javed Decl. ¶¶ 13-15.)

Under these facts, it is clear that Katalyst does not have a likelihood of success on the

merits of its trade dress infringement claim.  The trade dress for Sippin Syrup is functional; it is

not inherently distinctive and it has similarly not acquired secondary meaning in the one year it

has been on the market; and finally, it is not likely to be confused with Sum Syzrrup's trade dress

for the reasons set forth above.

### III.   KATALYST DOES NOT FACE IRREPARABLE HARM IF THE COURT DENIES ITS INJUNCTIVE RELIEF.

Katalyst has not shown that it will suffer irreparable harm if a preliminary injunction is

not issued.  Katalyst argues that because there is a likelihood of success on the merits of its

trademark claims, irreparable injury is presumed.  (Pl. Br. at 26.)  However, this is only the case

when there has been a "strong" showing of a likelihood of confusion.  *See Barre Nat'l v. Barr

Labs, Inc.*, 773 F.Supp.735, 746 (D.N.J. 1991).  Katalyst has not made a strong showing of

trademark infringement, and as such, the presumption does not apply.  *See id.*

Even if the presumption did apply, Katalyst has not shown it faces irreparable harm.  Its

allegations that it is losing business as a result of Starco's actions are either supported or

irrelevant.  For example, the distributor who allegedly switched from Sippin Syrup to Sum

Syzrrup sent an email to Courtland James dispelling that allegation.  In that email, Supreme

made clear that it has made a business decision not to carry any brand of relaxation drink going forward.  (James Decl. Ex. A.)  Katalyst did not have a non-competition clause with Starco in the Distributor Agreement Katalyst peremptorily and unlawfully terminated in September 2010.  Any loss of business it experiences because customers prefer Starco or its product is not compensable.

Katalyst has not shown a "strong" likelihood of success, or, indeed, any likelihood of success.  Accordingly, its irreparable harm claim should be rejected.

**IV.   THE BALANCE OF THE HARMS WEIGHS IN FAVOR OF DISSOLVING THE TEMPORARY RESTRAINTS AND DENYING THE PRELIMINARY INJUNCTION APPLICATION.**

Katalyst's application for a preliminary injunction also fails because the necessary balance of the harms weighs in favor of denying the preliminary injunction and dissolving the restraints.  "A basic purpose behind the balancing analysis is to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." *Opticians Association of America v. Independent Opticians Association of America,* 920 F.2d 187, 196 (3d Cir.1990).

In *Genovese Drug Stores, Inc. v. TGC, Inc.*, this Court recognized that it would be "economically unsound and, most likely, financially unfeasible for defendant to return to [the] original name," if, at the end of the lawsuit it was found to be improperly preliminarily enjoined. *Genovese Drug Stores, Inc. v. TGC, Inc.*, 939 F.Supp. 340, 350-51 (D.N.J. 1996).  The Court there found that "such harm is irreparable, and more devastating than the possibility of harm to plaintiff's reputation and good-will." *Id.* at 351.

Similarly, here, if the preliminary injunction were to issue compelling Starco to change the Sum Syzrrup name or trade dress, then it would be "financially unfeasible" for Starco to

26

48789/0001-7190582v2

return to either the original name of Sum Syzrrup or the original trade dress.  *See id.*  The preliminary injunction would, essentially, forever bar Starco from selling a relaxation drink under this name and branding.  This type of harm is "irreparable, and more devastating than the possibility of harm to [Katalyst's] reputation or good will."  *See id.*  This is especially so where Katalyst has not shown any customer complaints regarding the quality of the Sum Syzrrup product.  *See id.* at 350 n.5.

As such, the balance of the harms weighs in favor of Starco.  Therefore, the Court should dissolve the temporary restraints and deny the preliminary injunction.

## V.   PUBLIC POLICY FAVORS THE DENIAL OF INJUNCTIVE RELIEF.

Katalyst's application for preliminary injunctive relief should be denied because public policy favors the free flow of competition in the marketplace.  Moreover, public policy disfavors the use of a trademark as a means to obtain a monopoly of features of a product that are crucial to its success in the marketplace.  *See Standard Terry Mills, Inc.*, 803 F.2d at 780-81.  Here, Katalyst is merely trying to stop one of its competitors in the relaxation drink market.  Katalyst is envious that Starco has been in business for over 20 years and has an established relationship with many distributors throughout the country.  Contrary to public policy, Katalyst is trying to impede Starco's success with its new relaxation drink by preventing it from being sold on the market without justification.  The attributes of the Sum Syzrrup mark and packaging about which Katalyst complains are features of a relaxation drink that are integral to its successful marketing – specifically, the catchy trademark, branding, logo, bottle features, and tag line.  Public policy does not support granting Katalyst a monopoly on these elements.  *See id.*

48789/0001-7190582v2

## VI.    PLAINTIFF CANNOT SEEK EQUITABLE RELIEF BECAUSE IT COMES TO THE COURT WITH UNCLEAN HANDS.

A plaintiff who requests the assistance of a court of equity cannot himself be guilty of inequitable conduct.  *Precision Inst. Mfg. Co. v. Auto. Matin. Mach. Co.*, 324 U.S. 806, 814 (1945) (explaining that unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.")  Thus, courts will deny plaintiffs access to equitable relief when their own conduct is inequitable.

Katalyst comes to this Court with unclean hands.  The impetus for its lawsuit is its own misconduct in unlawfully terminating the Distribution Agreement.  That termination resulted in a gaping hole in Starco's product line and the need to create a new relaxation drink product to sell to its customers.  Starco did so lawfully and without any intent to infringe the trademark of Katalyst.

Katalyst, moreover, has chosen as its trademark a generic term signifying an illicit street product.  That choice, and Katalyst's effort to trade on the association with that illicit product, is causing significant concern among the law enforcement and medical communities.  Katalyst did not disclose to the Patent and Trademark Office or this Court the prior, generic meaning of its trademark.  This Court should not assist Katalyst in protecting that mark.

## VII.   IN THE ALTERNATIVE PLAINTIFF MUST BE REQUIRED TO POST A BOND TO PROTECT DEFENDANTS' INTERESTS.

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction … order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by a party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c) (emphasis added).  The Third Circuit strictly interprets this

48789/0001-7190582v2

bond requirement upon the issuance of a preliminary injunction.  *See Marsellis-Warner Corp. v. Rabens*, 51 F.Supp.2d 508, 534 (D.N.J. 1999) (citation omitted).

The purpose of the bond is to protect a defendant who is erroneously enjoined early in the litigation, before the facts are fully developed and tried.  *See Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 103 (3d Cir. 1988) (noting a trial court's discretion in determining the amount of a bond, but also finding that the trial court abused its discretion when it failed to provide the defendant with a bond for costs that it may suffer for an incorrectly issued injunction); *see also In re National Credit Management Group, L.L.C.*, 21 F.Supp.2d 424, 464 (D.N.J. 1998) ("since a preliminary injunction is granted before a trial is held on the merits, the possibility that it was incorrectly imposed is a reality.")  This protection is critical because "[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."  *W.R. Grace and Co. v. Local Union 759, Intern. Union of United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 770 n. 14 (1983)).

Here, as discussed in the accompanying declaration of Mr. Javed, Starco will suffer enormous damage if a preliminary injunction is granted.  Starco estimates its losses at $3.9 million should a preliminary injunction issue.  Accordingly, if the Court is inclined to grant the preliminary injunction, which it should not, the Court should require that Katalyst post a bond sufficient to protect Starco against those losses.

48789/0001-7190582v2

## <u>CONCLUSION</u>

For the foregoing reasons, Starco respectfully requests the Court dissolve the temporary

restraining order and deny Katalyst's request for a preliminary injunction.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Defendants, Starco Impex, Inc.,
USA Millennium GP, LLC,
USA Millennium, LP, and M. Tahir Javed


By:    _____*/s/ David M. Kohane*_____
                David M. Kohane


DATED:  November 22, 2010