**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | ) | |
| KATALYST BEVERAGE CORP., | ) | Civil Action No.: 10-5521 (JLL) |
| | ) | |
| Plaintiff, | ) | **OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| STARCO IMPEX INC., | ) | |
| d/b/a/ WHOLESALE OUTLET, | ) | |
| *a Texas limited liability company,* | ) | |
| | ) | |
| USA Millenium GP, LLC | ) | |
| *a Texas limited liability company* | ) | |
| | ) | |
| USA Millenium, LP | ) | |
| *a Texas limited liability company* | ) | |
| | ) | |
| M. Tahir Javed, | ) | |
| *an individual residing in Texas* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Hillside Beverage Packing, LLC, | ) | |
| *a New Jersey limited liability company* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**LINARES**, District Judge.

This matter comes before the Court by way of Plaintiff's Motion for Temporary

Restraints and a Preliminary Injunction.  On November 18, 2010, this Court issued a Temporary

Restraining Order (CM/ECF No. 8) as to Defendants Starco Impex, Inc. ("Starco") and Hillside

Beverage Packing, LLC ("Hillside"), to expire on November 29, 2010 at 11:59 p.m, which was

later extended until December 10, 2010 at 11:59 p.m.  (CM/ECF No. 32).  The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Plaintiff's Motion for a Preliminary Injunction is granted.

## I.  BACKGROUND

Plaintiff Katalyst Beverage Corporation ("Katalyst") is the owner of the relaxation beverage, "SIPPIN SYRUP," which has been sold by various retailers and convenience stores since May 2009.  Plaintiff's Memorandum in Support of Application for Temporary Restraining Order and Preliminary Injunction ("Pl.'s Brief") at 2.  In 2009, Katalyst registered the SIPPIN SYRUP mark and received U.S. Registration No. 3,726,532 for non-alcoholic beverages, namely carbonated beverages.  Declaration of Ron Urban ("Urban Decl.") at Ex. A.  Since its inception SIPPIN SYRUP has borne a trade dress consisting of:

"(a) a black plastic bottle with a short and narrow base, a wider cylindrical midsection, curving inward to form a tall and narrow neck, and a black plastic cap; (b) the brand name of the product "SIPPIN SYRUP" shown in bubble lettering and displayed at an angle; (c) a circle design displayed behind the product brand name; (d) a second geometric shape encapsulating the inner circle design; (e) progressively darker shading extending outward from the center of the label; (f) a short tag line ("Grip&Sip") displayed in close proximity to the brand name; (g) the listing of the blended items that promote relaxation (the "Proprietary Calming Blend") displayed at the bottom of the Supplement Facts; (h) the listing of ingredients displayed vertically and to the left of the Supplement Facts; and (I) all the aforesaid elements

superimposed over a black label."  Pl.'s Brief at 3.

SIPPIN SYRUP comes in three varieties: the original is a grape version that comes with a purple

label; "Kandy," which has a pink label; and "Griptonite," which bears a green label.  Urban Decl.

at ¶ 13-15.

In September 2009, Katalyst entered into an exclusive U.S. distribution agreement (the

"Distribution Agreement") with Starco.  Urban Decl. at Ex. H.  Under the Distribution

Agreement, Starco was required to use its "best efforts to promote the sale of" SIPPIN SYRUP.

Id.  Further, the Distribution Agreement required Starco to "call on the accounts considered

customers or purchasers of the merchandise and approach new accounts . . ."  Id.  On September

1, 2010, Katalyst cancelled the Distribution Agreement by letter, claiming that Starco had not

performed its obligations under the Distribution Agreement.  Urban Decl. at Ex. I.  Starco

maintains that it exceeded the targets laid out in the Distribution Agreement and that Katalyst's

cancellation of the agreement, without notice, constitutes a breach of contract.  Declaration of M.

Tahir Javed ("Javed Decl.") at ¶ 2(h).  This disagreement is currently the subject of two pending

lawsuits in Texas state court, respectively entitled: Starco Impex, Inc. d/b/a Wholesale Outlet v.

Katalyst Beverage Corporation, Ron Urban, and Gino Ciaschetti, Cause No. B188052.; and

Katalyst Beverage Corporation v. Starco Impex, Inc. d/b/a Wholesale Outlet, Cause No. 10-

11012.  Id. at ¶ 43.

One month after the dissolution of the Distribution Agreement, in October 2010, Starco

released its own relaxation beverage named "SUM SYZRRUP."  Starco used the same bottle

manufacturer ("Constar"), box manufacturer ("Unicorr Packaging") and bottler ("Hillside") as

Katalyst to bottle and package its own product, SUM SYZRRUP.  Urban Decl. at  ¶ 45.

Defendants allege that they contacted a number of bottling companies before ultimately settling on Constar.  Javed Decl. at ¶ 61.  Defendants also maintain that the decision to bottle SUM SYZZRUP in the exact same bottle as the one used by SIPPIN SYRUP and provided by Constar was merely a consequence of cost and function.  Javed Decl. at ¶ 62-70.

Plaintiff contends that the bottle and label for SUM SYZRRUP is intended to mimic the appearance of the SIPPIN SYRUP.  Urban Decl. at ¶ 47.  SUM SYZRRUP's label shows the brand name of the product in bubble lettering and is displayed at an angle.  It bears a circle design displayed behind the product name, a second geometric shape encapsulating the inner circle design, progressively darker shading extending outward from the center of the label, a short tag line ("RELAX. Get SUM") displayed in close proximity to the brand name; a list of the blended items that promote relaxation (the "Relaxation Blend") displayed at the bottom of the list of Supplement Facts, the list of ingredients displayed vertically and to the left of the Supplement Facts, and a black border surrounding all the aforesaid elements.  Id.  Plaintiff further argues that the "similarities between the products are exacerbated" when the bottles are placed in coolers that emphasize the shape and color of the bottle.  Id. at ¶ 48.  Defendants contend that certain features of the bottle, such as the short tag line and the list of ingredients, are functional; however, Defendants fail to address the reasons for the similarities between the two bottles' other shared features.  Defendants' Brief in Opposition to the Temporary Restraints and in Opposition to Plaintiffs' Application for a Preliminary Injunction ("Def.'s Brief") at 15-16.

Plaintiff made the instant application for a Temporary Restraining Order and Preliminary Injunction on November 16, 2010.  (CM/ECF No. 6).  On November 18, 2010, this Court issued a Temporary Restraining Order as to Defendants Starco and Hillside set to expire on November

29, 2010, but which was later extended until December 10, 2010 at 11:59 p.m.  (CM/ECF Nos. 8, 32).

## II.  LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy and should be granted only in limited circumstances."  Kos Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (internal quotations omitted).  This is particularly true where affirmative relief is sought.  See Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.").  A court may grant a preliminary injunction only if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  Kos Pharms., 369 F.3d at 708.  A party must produce sufficient evidence of all four factors–and a district court should weigh all four–for the requested injunctive relief to be awarded.  Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).   Nonetheless, a district court's decision to issue a preliminary injunction is discretionary.  Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1334 (Fed. Cir. 2006).

In order to prove trademark infringement, and therefore a likelihood of success on the merits of its claim, a plaintiff must show: "(1) that it has a valid and legally protectable mark; (2) that it owns the mark; and (3) that defendant's use of the mark to identify goods or services causes a likelihood of confusion."  A&H Sportswear, Inc. v. Victoria's Secret Stores, 237 F.3d 198, 210-11 (3d Cir. 2000); see 15 U.S.C. § 1114.

## III.  DISCUSSION

### A.  Trademark Infringement

#### 1. Likelihood of Success on the Merits

##### a. Katalyst Owns a Valid and Legally Protectable Mark

In 2009, Katalyst registered the SIPPIN SYRUP mark and received U.S. Registration No. 3,726,532 for non-alcoholic beverages, namely carbonated beverages.  Urban Decl. at Ex. A. Starco claims that SIPPIN SYRUP is not a valid and legally protectable mark because it is a generic term for an "illegal cocktail."  Def.'s Brief at 5.  Katalyst counters that the doctrine of "licensee estoppel" precludes defendants from challenging the validity of Katalyst's registration for SIPPIN SYRUP.  However, the doctrine of licensee estoppel precludes only the licensee from challenging the validity of the trademark.  Papercraft Corp. v. Gibson Greeting Cards, 515 F.Supp. 727, 728 (S.D.N.Y. 1981) ("[T]here are no cases in which a doctrine of licensee estoppel to bar one other than the licensee from challenging a trademark's validity because of the derivation of benefit from the license.").  It does not preclude other parties from challenging the validity of the mark, "even those closely affiliated with the licensee are not foreclosed." McCarthy on Trademarks and Unfair Competition §18:63 (4th ed. 2003).  Thus, at the very least, defendants USA Millennium GP, LLC, USA Millennium, LP, and M. Tahir Javed are free to challenge the validity of Katalyst's mark.

While Plaintiff's mark, as evidenced by its federal registration certificate, is valid; it is not, at this stage, inconstestable. A registered trademark becomes incontestable after the owner files an affidavit stating that is has been in continuous use in commerce for five consecutive years subsequent to registration, that it is still in use, and there are not pending proceedings and no

adverse decisions concerning the registrant's ownership or right to registration.  Total

Containment, Inc. v. Environ Prods., Inc., 921 F.Supp 1355, 1407 n.24 (E.D.Pa. 1995) (citing 15

U.S.C. § 1065) aff'd in part & vacated on other grounds, 106 F.3d 427 (Fed. Cir. 1997).  As

Plaintiff's mark has only been in use since 2009, it is not inconstestable.

　　　　Where there is a question as to the validity of a trademark, "in determining whether a

trademark is protectable, courts must classify the mark into one of four categories, ranging from

strongest to weakest": (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; and (4) generic.

Penzoil Quaker State Co. v. Smith, 2008 WL 4107159 at *11-12 (W. D. Pa. 2008) (citing A & H

Sportswear, 237 F.3d at 221).  A contestable trademark is only entitled to protection when it has

reached a certain level of inherent distinctiveness, i.e. something other than generic.  See A.J.

Canfield v. Honickman, 808 F.2d 291, 296 (3d Cir. 1986).  A "'generic term' is one that refers to

the genus of which the particular product is a species."  Park n' Fly v. Dollar Park and Fly, Inc.,

469 U.S. 189, 194 (1985) (citing Abercrombie & Fitch v. Hunting World, 537 F.2d 4, 9 (2nd Cir.

1976).

　　　　Defendant argues that Plaintiff's mark is a generic term for a class of carbonated

beverages as it describes an "illicit cocktail" ("sippin syrup") that is popular in the hip-hop

community.  Def.'s Brief at 4-5.  However, SIPPIN SYRUP is a relaxation beverage, and not an

illegal cocktail.  In fact, SIPPIN SYRUP does not contain any illegal ingredients.  Pl.'s Brief at 4.

Therefore, SIPPIN SYRUP cannot possibly refer to "the genus of which the product is a species"

as SIPPIN SYRUP and sippin syrup are categorically and substantively different products.

Rather, Plaintiff's mark makes the same "play on the underground drink name" that Defendant

claims its own mark intends.  See Javed Decl. at ¶ 76.  Thus, this Court finds that Plaintiff's

mark is not generic and therefore legally protectable.

### b. There is a Likelihood of Confusion Between the Products

Although the burden for establishing that a preliminary injunction is proper remains high, it is one that is easily satisfied given the circumstances presented here.  To prevail on a claim for trademark infringement or unfair competition, the owner of a valid and legally protectable mark must show that a defendant's use of a similar mark for its goods causes a likelihood of confusion. In determining whether a likelihood of confusion exists, regardless of whether the two products directly compete, the Third Circuit has set forth a test, which includes consideration of the following factors: (1) degree of similarity between the products; (2) the strength of the owner's mark; (3) factors indicative of the level of care expected by consumers; (4) the length of time defendant has used the mark without evidence of actual confusion arising; (5) intent of the defendant; (6) evidence of actual confusion; (7) whether the goods are marketed through the same channels; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the public due to the similarity of function; and (10) other facts that suggest that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the Defendant's market. A&H Sportswear, Inc., 237 F.3d at 215 (citing Interpace v. Lapp, 721 F.2d 460, 463 (3d Cir. 1983)) (the "Lapp Factors").  In its November 18, 2010 Order (CM/ECF No. 8), this Court preliminarily found that, after considering each of the foregoing factors, Plaintiff had met its burden of demonstrating a likelihood of success on the merits of a trademark infringement claim.

The Court now examines the relevant factors more closely[1].

### 1.  The Degree of Similarity Between the Two Marks

Marks are confusingly similar when consumers would likely conclude that they share a common source, affiliation, connection or sponsorship.  Fisons Horticulture, Inc. V. Vigoro Industries, Inc., 30 F.3d 466, 477 (3d Cir. 1994).  Where, the goods are directly competitive, "'the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products.'" Kos Pharms., 369 F.3d at 708 (quoting McCarthy on Trademarks and Unfair Competition §23.20 (4th ed. 2003)).  As both SIPPIN SYRUP and SUM SYZRRUP are relaxation beverages, it is clear they are directly competitive.

Plaintiff supplies, *inter alia*, letters from Keith Meschi and Marlon Pruitt as evidence of actual confusion in the market.  (Pl.'s Brief at Exs. N, O).  Mr. Pruitt's letter reports that SUM SYZRRUP "is completely copying everything about" SIPPIN SYRUP and Mr. Meschi's letter claims that if he didn't know better, he would have thought that SIPPIN SYRUP and SUM SYZRRUP were "the exact same product."  Id.  However, while these exhibits are persuasive, this Court finds that the Declaration of Susan Lee ("Lee Decl."), submitted by Defendants, best illustrates the degree of similarity and likelihood of confusion between the two marks.

In her declaration, Susan Lee declares that she is the national sales and marketing representative for Starco.  Lee Decl. at  ¶ 1.  In October 2010, Ms. Lee showed SUM SYZRRUP at a trade show sponsored by the National Association of Convenience Stores.  Id. at ¶ 2.  While at the show, Ms. Lee says a man named Jeffrey Outlaw "approached the booth, looked at the

---

[1]The Court has considered all ten factors, but only writes on those factors most relevant to the claims at issue.

product line, and said 'So you are no longer selling SIPPIN SYRUP?'" Id. at ¶ 3.  Defendants

rely on this declaration to establish that "clearly [Mr. Outlaw] recognized that [SUM SYZRRUP]

was different from SIPPIN SYRUP and was not confused."  Id. at ¶ 4.  However, this Court finds

that Ms. Lee's anecdote establishes the completely opposite assertion.  Rather, it is clear that Mr.

Outlaw believed that SIPPIN SYRUP and SUM SYZRRUP were either produced by the same

manufacturer, or were related in some other way.  His behavior suggests that the "consuming

public might expect the prior owner to manufacture both products, or expect the prior owner to

manufacture a product in the defendant's market, or expect that the prior owner is likely to

expand into the defendant's market."  See Lapp Factor No. 10.  At the very least, Ms. Lee's

declaration proves that "there is a relationship between the goods in the minds of the consumers,

whether because of the near identity of the products, the similarity of function, or other factors."

See Lapp Factor No. 9.  In other words, Ms. Lee's declaration actually establishes the ninth and

tenth Lapp Factors in favor of the Plaintiff, not the Defendants.  Thus, due to the evidence

demonstrating similarity of the products and therefore either actual confusion at most, or a

relationship between the products at least, Lapp Factors one, six, nine, and ten weigh in favor of

the Plaintiff.

## 2.  The Level of Care Expected by the Consumer

Katalyst argues that the cost of these products is so small that consumers will not pay

attention to the manufacturer in selecting the beverage.  Pl.'s Brief at 9.  Defendant retorts that

any consumer of beverage related products is aware that there are a multitude of choices and

purchasers of these products are sophisticated enough to distinguish between similarities in

packaging, names, flavors, and ingredients.  Def.'s Brief at 11.  However, a low price increases

the likelihood of confusion because consumers take less care in purchasing inexpensive goods.

Versa Prods. Co. v. Bifold Co. (Mfg.), 50 F.3d 189, 204 (3d Cir. 1995).

Additionally, these relaxation beverages are often sold in coolers where they are submerged in ice.  In that way, they are distinguishable from the beverage market that Defendant describes wherein its consumers are discerning, as their distinguishing characteristics are often obstructed.   As the products are often sold in a way that customers are only presented with the top of the bottle, the effects of the distinguishing details are diminished.  Given the low price point of these products, it follows that the level of care by the consumer is often diminished as well, and that a consumer may unknowingly purchase one product when it intended to buy the other.  See McCarthy on Trademarks and Unfair Competition § 23:95 (4th ed. 2010) ("Purchasers of relatively inexpensive goods such as ordinary grocery store foods are held to a lesser standard of purchasing care.").  Thus, Lapp Factor three weighs in favor of the Plaintiff.

### 3.   The Intent of the Defendant in Adopting the Mark

In determining the defendant's intent in adopting the mark, the relevant inquiry is "whether the defendant adopted its mark with the intent of obtaining unfair commercial advantage from plaintiff's reputation."  One World Botanicals, Ltd. v. Gulf Coast Nutritionals, Inc., 487 F.Supp 317, 334 (D.N.J. 1997).  Plaintiff alleges that Starco created a copycat product and is attempting to supplant SIPPIN SYRUP in the relaxation beverage market.  Pl.'s Brief at 5-6.  Defendant maintains that when Katalyst allegedly improperly terminated the Distribution Agreement, because Starco already had agreements with distributors and retailers requiring it to provide a relaxation drink, it was forced to either: manufacture its own relaxation beverage, or discontinue the product line and absorb the losses.  Javed Decl. at ¶ 47-48.  The Distribution

Agreement was cancelled in September 2010, and SUM SYZRRUP was placed on the market just one month later, in October 2010.

Defendant Javed states that he searched for and ultimately used different companies to perform each of the following tasks: develop the formula, buy the extracts and the vitamins, develop the flavors, purchase the flavors, develop the label, print the label, purchase the bottles, purchase the caps, design the graphics of the box, make the box, fill the bottles, move all the products from one place to another, and purchase the natural colors.  Id. at ¶ 59.  He also says that he declined to use Garden State Nutritionals, a "one stop [shop] for the manufacture of products," because they could not meet the two week deadline that was imposed on him by the cancellation of the Distribution Agreement.  Id. at ¶ 58.  Defendant never establishes that he was able to accomplish his goal within the two week time period.

The suspiciously short time period within which Defendant claims to have developed SUM SYZRRUP is contrasted with the seven to eight month period that it took Katalyst to develop SIPPIN SYRUP.  Urban Decl. at ¶ 25.  These facts beg the question: did Starco start developing its own relaxation beverage before the cancellation of the Distribution Agreement, and not, as it claims, afterward in an effort to remedy its potential losses?  While Defendant's intent cannot be established with certainty at this stage, given the abbreviated time period between the cancellation of the distribution agreement and the release of SUM SYZRRUP, as well as the overwhelming similarity between the two products, the possibility that Defendant's intent may not be entirely innocent remains.  Thus, Lapp Factor five weighs in favor of the Plaintiff.

4.  The Relevant Market

Lapp Factors seven and eight instruct the Court to examine whether the goods are marketed through the same channels, and the extent to which the targets of the parties' sales efforts are the same.  These factors both clearly weigh in favor of the Plaintiff.  See Kos. Pharma., 369 F.3d at 722 ("Where both parties target their sales efforts to the same consumers, this factor weighs in favor of plaintiff.").

First and foremost, both products are relaxation beverages.  Second, both products were named in an effort to reference the underground drug, sippin syrup.  Javed Decl. at ¶ 76.  Third, both Katalyst and Starco market and distribute their products to the same distributors and retailers through the use of sales representatives.  Pl.'s Brief at 17.  Lastly, the two products also both use Hillside as their packer.  Javed Decl. at ¶ 73.  Given the myriad overlap between the parties' marketing efforts, Lapp Factors seven and eight overwhelmingly weigh in favor of the Plaintiff.

## 2. Irreparable Harm, Balance of the Harms, and the Public Interest

As the majority of the Lapp Factors indicate Plaintiff's likelihood of success on the merits, Plaintiff must now demonstrate the it will suffer irreparable harm if a preliminary injunction does not issue.  However, in a trademark infringement claim, it is well-settled that once the likelihood of success on the merits has been established, "the inescapable conclusion is that there is also irreparable injury."  Kos Pharms., 369 F.3d at 726 (citing Pappan Enters, Inc. v. Hardee's Food Sys., 143 F.3d 800, 805 (3d Cir. 1998)).  Lack of control over one's mark "creates the potential for damage to its reputation[, which] constitutes irreparable injury . . ."  Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 196 (3d Cir. 1990) (emphasis in

original).  Thus, "trademark infringement amounts to irreparable injury for the purposes of granting a preliminary injunction in a trademark case." S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992).

The Court now considers the potential harm to the non-moving party if Plaintiff's application is granted.  Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the moving party must post bond in an amount that the court considers proper to pay the costs and damages sustained by any party found to be wrongfully restrained or enjoined.  Therefore, even if this Court were to wrongfully restrain or enjoin the Defendants, the Defendants would be protected by the posted bond.

The final requirement necessary for an injunction, namely, the public interest, also weighs in favor of issuance of injunctive relief because "there is a public interest in the protection of [a] trademark and to avoid confusion in the public." Bill Blass, Ltd. v. Saz Corp., 751 F.2d 152, 156 (3d Cir.1984).

### B. Trade Dress Infringement

As Plaintiff has established entitlement to a preliminary injunction based on the merits of its Trademark Infringement claim, there is no need for the Court to address the merits of its Trade Dress Infringement claim at length.  The trade dress of a product is essentially its "total image and overall appearance." Taco Cabana Intern., Inc.  v. Two Pesos, Inc., 932 F.3d 1113, 1118 (5th Cir. 1991) aff'd, 505 U.S. 738 (1992).  Trade dress infringement is established by showing that: "(1) the trade dress qualifies for protection, which requires considering functionality and either distinctiveness or secondary meaning; and (2) that the trade dress has been infringed, which requires considering the likelihood of confusion." Id. at 1117-1118 (citing

Sicilia Di R. Biebow & Co. v. Cox, 732 F.2d 417, 425 (5th Cir. 1984).

**1. The Trade Dress is Entitled to Protection**

SIPPIN SYRUP's trade dress is distinctive, and not functional.  Where the trade dress is "made up of individual elements, some of which serve a functional purpose," the trade dress is still protectable so long as the combination of the individual elements is arbitrary.  Id. at 1119 (emphasis in original).  For example, the black bottle used by both Katalyst and Starco may serve a functional purpose, i.e. shielding the ingredients from light; but when that same black bottle is used in conjunction with the other elements of SIPPIN SYRUP's trade dress, the trade dress is distinctive.  Further, Plaintiff's trade dress is only not protectable when "taken as a whole must be used by others in order to compete in the industry." Id. (emphasis in original).  In this case, the wide range of available packing and design options, as evidenced by other competitors' trade dresses, leaves Starco with a multitude of alternatives that would not prove confusingly similar to Katalyst's trade dress.  Thus, SIPPIN SYRUP's trade dress is entitled to protection.

**2. The Trade Dress has been Infringed**

As this Court has already established a likelihood of confusion, as well as instances of actual confusion, between SIPPIN SYRUP and SUM SYZRRUP. it is clear that SIPPIN SYRUP's trade dress has been infringed.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for a Preliminary injunction is granted.  An appropriate order accompanies this opinion.

DATED: December 10, 2010             /s/ Jose L. Linares
                                     JOSE L. LINARES
                                     UNITED STATES DISTRICT JUDGE